WILDWOOD MANOR, INC. *v.* GARY NATIONAL BANK.

[No. 868A138. Filed February 9, 1970. Rehearing denied March 24, 1970.]

*Fred G. Donnersberger, Wilson, Benne, Feingold & Donnersberger,* of Hammond, for appellant.

*Fred M. Cuppy, Gerald K. Hrebec, Thomas, Thomas, Burke & Richardson,* of Gary, for appellee.

LOWDERMILK, C.J.—This action was brought by appellant, plaintiff below, against appellee, defendant below, for money damages growing out of a breach of an oral contract between the parties pertaining to an accounts receivable financing program on a notification basis.

The action was based, and the issues were formed, on appellant's amended complaint in two paragraphs, appellee's answer thereto in five paragraphs, the first being under Supreme Court Rule 1-3, and the remainder being affirmative; appellant's reply to the four affirmative paragraphs of answer; appellee's cross complaint in nine paragraphs and appellant's answer thereto in nine paragraphs, the first eight being under Supreme Court Rule 1-3, and the ninth being affirmative.

Appellee's cross complaint was for balances due on promissory notes on the accounts receivable financing program on a notification basis as agreed by and between the parties.

Briefly, appellant contends that appellee's breach of contract proximately caused and allowed dissipation of appellant's funds in the approximate amount of $92,000, and appellee, by its cross complaint, contends that appellant, through its agents, facilitated the dissipation of appellant's moneys by one of its own officers in such a manner that it left the appellee holding approximately $64,000 of unsecured notes of appellant.

This cause was tried by jury, which after many days of trial, volumes of evidence and approximately 500 exhibits, returned its verdict on Paragraph I of appellant's amended complaint for the appellant in the sum of $3,500 and for appellant and against appellee on appellee's cross complaint, and for appellee on appellant's pleading Paragraph II.

The assignment of errors does not include the jury's verdict on pleading Paragraph II of appellant's amended complaint and there is nothing before the court thereon.

The period of time covered by the issues of this litigation commenced in November, 1964, and ran to February 20, 1967. At the outset, the appellant, which owned a nursing home in the City of Gary, had arranged with one Tomye Calloway to manage the nursing home and to secure financing for the operation, went to the appellee bank, and it was there agreed that, pursuant to the consent of the County Department of Public Welfare of Lake County, Indiana, that all county warrants issued by its authority for services rendered to its recipients in appellant's nursing home were to be forwarded to the bank and the bank agreed, in return, to lend appellant up to but not more than 80% of the amount of the assignment. This was contingent upon the execution of a collateral promissory note. Said County Department of Public Welfare, upon acknowledgement of the assignment, was to mail directly to appellee the drafts in payment of the indebtedness acknowledged by the assignment. The bank was then to apply the money, first to the payment of the notes, then take back the interest due on the note and distribute the balance of said moneys into appellant's corporate checking account. This arrangement was agreed upon so that the bank would have its loans fully secured by the welfare warrants.

Appellant alleged further that the bank received drafts in payment of the specific notes during the month subsequent to the month in which the assignments and notes were executed and instead of paying the notes with the funds assigned to said notes, appellee bank distributed the funds into the corporate checking account of appellant and by doing so facilitated the dissipation of appellant's moneys by one of appellant's officers, directors and employees.

Appellant further claims that notes which had originally been secured were renewed subsequent to the time the money payment of the original note had been tendered to appellee bank in payment of note and further, maintained that the conduct was contrary to the terms of the oral agreement entered into by and between the parties.

Appellee contends that appellant sustained no damages under any breach of the contract and that all moneys received by appellee from said Welfare Department were placed directly into the corporate checking account of appellant, thereby giving full credit to appellant for all sums coming into the bank from appellant's debtor, the Welfare department.

Appellee, by further answer, alleges that it had never been notified of any misallocation or misapplied funds to the corporate checking account, instead of being applied to various notes due appellee, until about February of 1967. Appellee maintains a waiver of any breach of the alleged contract by appellant.

Appellee further alleges that a man named George Walker and Tomye D. Calloway, a woman, were agents of the appellant, acting for and on behalf of appellant, pursuant to authority conferred by the corporation on them and that appellee relied on these agents' authority, including the authority to renew corporate notes for the appellant. Appellee further alleged that appellant accepted benefits derived out of the execution of said notes by said agents and the appellant recognized the contracts which Walker and Calloway made as agents, and that the same was binding upon appellant because appellant had clothed Calloway and Walker with the proper appearance of agency.

Appellee further alleged that on or about February 20, 1967, of the various loans executed by appellant, that four different loans had been renewed with appellant's knowledge, pursuant to the authority contained in the certified copies of resolutions of the Board of Directors of appellant.

Appellant denied these affirmative allegations of appellee and stated further that the placing of the money directly into the corporate checking account of appellant was a misappropriation of specifically pledged money which, under the terms of the contract, was to be applied directly to retire the individual notes and that by the conspiratorial conduct of the ap-

pellee's agent and Tomye D. Calloway, appellant's agent, the placing of the money in the corporate account rather than paying the individual notes was the element that facilitated the conversion of the corporate funds to the benefit of said Tomye D. Calloway and the appellee bank.

In reply to the affirmative allegations of appellee the appellant alleged that the appellee never relied upon the actual authority conferred upon appellant's agent, but did conspire with Tomye D. Calloway to exceed any authority which she may have had. And as a part of the conspiracy Tomye D. Calloway was to convert proceeds of various notes and to convert the proceeds tendered by appellant's debtor to appellee so that they might be used for the personal benefit of said Tomye D. Calloway and the bank. It is alleged these funds were originally tendered by appellant's debtor for application to the retirement of the note to which it was pledged.

Appellee duly filed a motion for new trial, which was sustained by the court on May 23, 1968, at which time the court made the following record:

> "Comes now the parties hereto in court by their respective counsels and arguments are now heard on motions of both sides for new trial; at the conclusion of which the court overrules the defendant's motion for judgment notwithstanding the verdict and grants the defendant's motion for a new trial as to Paragraph I of plaintiff's complaint and as to defendant's cross complaint and grants the plaintiff's motion for a new trial as to Paragraph II of its complaint."

Thereafter, appellant filed a motion requesting the court to reduce to writing the reasons for granting the new trial.

This is the proper procedure established for this kind of proceeding, as set forth in *Harmon* v. *Arthur* (1963), 134 Ind. App. 526, 189 N. E. 2d 719, Judge Ryan of this court stated that:

> "We have heretofore established the requirement that in sustaining a motion for a new trial the trial court must

state in writing its specific reasons for granting such a trial. *Rife* v. *Karnes* (1962), 133 Ind. App. 226, 181 N. E. 2d 239; *Newsom* v. *Penn. R.R. Co. et al.* (1962), 133 Ind. App. 582, 181 N. E. 2d 240, .."

The court complied with the request and on May 28, 1968, entered the following order on the motion for new trial:

"(1) That the verdict against the defendant on its cross complaint was not sustained by sufficient evidence, but rather the evidence as to said cross complaint is overwhelmingly in favor of the defendant, there being no affirmative answers addressed to said cross complaint and the evidence being clear that said notes sued on and said cross complaint have not been paid, the court exercises its prerogative as the thirteenth juror in sustaining said motion for a new trial.

"(2) The court erred in refusing to grant defendant's motion for a directed verdict at the close of plaintiff's case with respect to the notes sued on in its cross complaint.

"(3) With respect to defendant's motion for a new trial as to paragraph one of plaintiff's complaint, the court is of the opinion that there was insufficient evidence to sustain said verdict, and further that the court erred in giving plaintiff's instruction number five to the jury.

"(4) The court is further of the opinion that plaintiff's motion for a new trial as to paragraph two of plaintiff's complaint should be granted for the reason that the verdict of the jury was tainted with an improper consideration of the issues formed by the cross complaint, and the improper instruction given with respect to paragraph one of plaintiff's complaint, and that therefore a new trial should be granted as to all the verdicts and issues in this case."

An appeal was prayed and granted to this court and the appellant filed assignment of errors as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to appellant in this:

I

"The Court erred in granting appellee's motion for new trial on pleading paragraph I of plaintiff's amended complaint.

## II

"The Court erred in granting appellee's motion for new trial on appellee's cross-complaint."

In the trial court there were many substantive issues heard and argued and facts were complex and confusing and the evidence was voluminous. In the interest of brevity we will not attempt to set out the facts as to the conduct and management of the business of the nursing home or the bank, but will confine our remarks to merely state that such management and operation of each of the parties hereto as to its own business and the conduct of business between them was handled loosely and could not approach a standard considered to be one of either good business management or good banking.

We are, in this appeal, confronted with the question as to whether the trial judge abused his discretion in sustaining the motion for a new trial as the 13th juror. Our statutory jurisdiction of this question is set out in Burns' § 2-3201(b) as follows:

"A ruling or order of the court granting a motion for a new trial shall be deemed to be a final judgment and an appeal may be taken therefrom."

In the case of *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N. E. 2d 486 (Tr. Den. Mar. 3, 1964), from which Judge Smith quoted in the case of *White* v. *Bardach* (1968), 143 Ind. App. 586, 241 N. E. 2d 866, the court said:

"It therefore becomes the sole duty of this court to examine the record to see if (1) the trial court abused its judicial discretion, (2) a flagrant injustice has been done the appellant, or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant. *Newsom* v. *Pennsylvania Railroad Company, supra; Topper* v. *Dunn* (1961), 132 Ind. App. 306, 177 N. E. 2d 382; 4 Works' Indiana Practice, Lowe's Revision, § 61.140, p. 120.
\* \* \*

"On consideration of a motion for a new trial, the trial judge has an imperative obligation to weigh the conflicting evidence. *Novak* v. *Chicago & C. Dist. Tr. Co.* (1956), 235 Ind. 489, 135 N. E. 2d 1; *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N. E. 2d 553; *State ex rel. Conner* v. *Pritchard* (1944), 115 Ind. App. 55, 54 N. E. 2d 283 and cases cited at p. 59; *Bell* v. *Bell* (1940), 108 Ind. App. 436, 29 N. E. 2d 358; *Borenstein* v. *Uhl* (1939), 107 Ind. App. 67, 20 N. E. 2d 189.

"On a motion for a new trial it must clearly appear to the trial judge that substantial justice has been done and, if in his opinion the preponderance of the evidence is against the verdict, it is his duty to grant the new trial. *Christy* v. *Holmes* (1877), 57 Ind. 314; *Glover* v. *Stevenson* (1891), 126 Ind. 532, 26 N. E. 486; *Smith* v. *Stump* (1895), 12 Ind. App. 359, 40 N. E. 279; *Monfort* v. *Indianapolis, etc., Traction Co.* (1920), 189 Ind. 683, 128 N. E. 842; *Lowry* v. *Indianapolis Traction, etc., Co.* (1920), 77 Ind. App. 138, 126 N. E. 223; *Novak* v. *Chicago & C. Dist. Tr. Co., supra; Hinds* v. *McNair, supra; State ex rel. Conner* v. *Pritchard, supra,* and cases cited at p. 59.

"We will be hesitant to overrule a trial court in granting a motion for new trial for the reason that there are strong presumptions in favor of the trial court's action, and it is therefore a sound precedent which dictates that this court should be reluctant to second guess a trial court in granting a motion for new trial. *State ex rel. Conner* v. *Pritchard, supra; Indianapolis, etc., Traction Co.* v. *Harrell* (1922), 192 Ind. 188, 134 N. E. 871; *Lewis* v. *State* (1894), 137 Ind. 344, 36 N. E. 1110; *Novak* v. *Chicago & C. Dist. Tr. Co., supra; Powell* v. *Grimes* (1856), 8 Ind. 252; *Cronk* v. *Cole* (1858), 10 Ind. 485; *Leary* v. *Ebert* (1880), 72 Ind. 418; *Topper* v. *Dunn, supra,* and cases too numerous to cite further.

"The trial judge is more than a mere umpire; his duties extend beyond the bounds of confining the evidence to the issues and instructing the jury on the law of the case; it was his duty to hear the case along with the jury; he had the opportunity to see and know the jury; he had the duty to observe the witnesses and note the level of their intelligence and wisdom together with their independence or lack of it, their prejudice or lack of it concerning matters about which they testified, and to note their bias or prejudice, their interest or lack of interest. In short, it was his duty to keep his eyes and ears open to what was going

on during the trial so that when confronted with a motion for a new trial, he could pass upon the purely legal questions involved in the case, as well as determine the weight and sufficiency of the evidence to sustain the verdict. There are many things the trial judge must take in consideration in determining the weight of conflicting evidence and passing upon the question of the preponderance thereof which make his duty in the first instance entirely different from that of an appellate tribunal as a court of review, for at the appellate level we have only the record and briefs exemplified by the cold type before us. *Hinds* v. *McNair, supra,* and cases cited. Re trial courts' duty to weigh conflicting evidence, credibility of witnesses, etc., see also *Cleveland, etc., R.R.* v. *Baker* (1920), 190 Ind. 633, 128 N. E. 836; *Cincinnati, etc., R.R.* v. *Madden* (1893), 134 Ind. 462, 34 N. E. 227, at p. 469; *State ex rel. Conner* v. *Pritchard, supra; Christy* v. *Holmes, supra; George H. Hammond & Co.* v. *Schweitzer* (1887), 112 Ind. 246, 13 N. E. 869; *Borenstein* v. *Uhl, supra; State ex rel. Winslow* v. *Fisher* (1941), 109 Ind. App. 644, 37 N. E. 280; *Indianapolis, etc., Traction Co.* v. *Harrell, supra; Chicago, etc., R.R.* v. *Rans* (1927), 86 Ind. App. 300, 154 N. E. 876; *Lewis* v. *State, supra.'* "

Judge Smith, in *White* v. *Bardach,* further quoted from the *Bailey* case as follows:

" 'The warp and woof of the fabric of our judicial system which guarantee all citizens equal justice under the law depend upon the maintenance of a pattern of judicial responsibility, restraint, and an absolute and conscientious adherence to the rules governing our judicial tribunals at each level. The structure of our judicial system rests upon the solid foundation of our trial courts at every level of government. The keystone of justice in our system is the trial court, thus if it is to be accomplished under the law, it must be attained first at the trial court level. If the trial courts and the appellate tribunals will remain steadfast to the rules governing their respective duties and functions, substantial justice will be done insofar as human agencies are capable of its accomplishment.

" 'The power of the trial judge to examine the whole case with a view toward securing a result not merely legal, but which also manifests justice, is a power not in derogation of the right to trial by jury as urged by the appellant;

quite the contrary, is one of the historic safeguards of that right. This power, if exercised in pursuance of sound judicial discretion, is a power without which our jury system might become a capricious, fickle and intolerable tyrannny under which no system of jurisprudence in a free society could long survive.' "

See also: *Barner et al.* v. *Bayless et al.* (1893), 134 Ind. 600; *Topper* v. *Dunn* (1961), 132 Ind. App. 306, 177 N. E. 2d 382.

The trial judge clearly set out his reasons for issuing his order granting a motion for new trial, which have heretofore been set forth in this opinion and from this, after a complete review of the evidence, we are of the opinion that: (1) the trial court did not abuse its judicial discretion in granting the new trial on appellee's cross complaint—(it must be noted that in the judge's reason, he apparently inadvertently misquoted the record in that he said ". . . there being no affirmative answers addressed to said cross complaint . . ."; while it is true that paragraph 9 of the answer to appellee's cross complaint is in the affirmative, we cannot find where the discrepancy can in any way be prejudicial to either of the parties in the litigation)'; (2) no injustice has been done to the appellant; and (3) there has not been a strong case for relief from the trial court's ordering a new trial been made by the appellant.

The assignment of errors alludes further to appellant's pleading Paragraph I of its amended complaint. The court granted the new trial as to Paragraph I of appellant's amended complaint with the written specification, as heretofore set out, for the reason there was insufficient evidence to sustain said verdict and further, that the court erred in giving plaintiff's Instruction No. 5 to the jury.

If either one of the reasons given by the court for its action in granting the motion for new trial is sufficient reason therefor, it is not incumbent upon this court to discuss the other reasons. *White* v. *Bardach, supra.*

The reason given by the court for granting the new trial as to Paragraph I of appellant's amended complaint was, as heretofore stated, for two reasons, namely, insufficient evidence to sustain said verdict and, secondly, that the court erred in giving plaintiff's Instruction No. 5 to the jury. This reason is in the conjunctive and, therefore, under the rule, this court having passed on the first part of the specification, namely, "that there was insufficient evidence to sustain said verdict", we are not required to pass on the other reason assigned.

In the case at bar the only question raised by the assignment of errors is the ruling of the trial court in sustaining the motion for a new trial.

In the case of *Reibly* v. *Gobin* (1965), 138 Ind. App. 306, 212 N. E. 2d 173, the court said:

"The only error upon which the appellant can base this appeal is the ruling of the trial court in sustaining the motion for a new trial."

On this point the court, in the case of *White* v. *Bardach, supra,* said:

"If the appellant in direct appeals is permitted to go behind the verdict in his favor and urge errors, a Pandora's Box of rulings on demurrers, continuances, admission of evidence, refusals to direct verdicts, and the like, will be opened up. The scope of review under the direct appeals statute was clearly intended to be limited to the ruling on the motion for a new trial, as this court held in the *Reibly* case."

We will not go behind the motion for a new trial and the written reasons stated by the trial judge in granting the motion for a new trial; we have considered only the alleged error that the trial court granted a motion for a new trial on pleading Paragraph I of plaintiff's amended complaint and on appellee's cross complaint.

We are of the further opinion that the trial court did not

abuse its discretion in granting the motion for a new trial, that no flagrant injustice has been done appellant, and that no strong case for relief from the trial court's ordering a new trial has been made by the appellant and this cause is hereby remanded to the trial court for a new trial.

Judgment affirmed.

Costs versus appellant.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 255 N. E. 2d 128.